# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **TRAVIS CAMPBELL**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device (Described in Attachment A)—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. Your affiant is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "ATF"), United States Justice Department, Louisville Field Division, Wheeling, West Virginia, Satellite Office. The statements in this Affidavit are based on my personal knowledge, or on information provided to me by government investigators and officials, or contained in official government records that I have reviewed.

3. Since March 2014, your affiant has been employed as an ATF Special Agent. The Affiant was previously employed as an Indiana Conservation Officer and graduated from Indiana's Basic Law Enforcement Training Program held at the Indiana Law Enforcement Academy. The affiant holds a Bachelor of Science in Criminal Justice from Western Carolina University. The affiant attended the Federal Law Enforcement Training Center (FLETC) and the ATF National Academy from March-September of 2014. Your affiant's ATF Special Agent training consisted of a 12-week Criminal Investigator Training Program taught at the FLETC. This program covered general training in the investigative techniques of federal law

enforcement, including: interviewing, drafting of reports, affidavits, and complaints and training on search and seizure related issues. Upon completion of this program, your affiant then completed ATF Special Agent Basic Training, which is a 15-week training program taught at the ATF National Academy. This training covered investigative techniques and procedures relating to alcohol, tobacco, firearms, explosives and arson related offenses. This training also included, but was not limited to, investigative techniques and procedures relating to controlled substance offenses. Your Affiant knows, from training and experience, that investigations involving the illegal possession of firearms often involve the illegal possession, manufacturing, or distribution of controlled substances.

4. This Affidavit is intended to show only that there is sufficient probably cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

5. All of the information contained below is either personally known to the Affiant or, as will be noted, has been provided by other law enforcement officers, named witnesses, confidential sources, or was obtained through information which was previously subpoenaed or seized.

   6. The United States, including the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), is conducting a criminal investigation of Anthony A. SHUSTER, JR. aka Anthony SHUSTER aka TINY who has violated Distribution of More Than 50 grams of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); Distribution of More Than 5 grams of Methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B); and Aiding and Abetting the Unlawful Transfer of a

Machinegun, in violation of Title 18, United States Code, Sections 2, 922(o), and 924(a)(2).

7. On January 3, 2019, your affiant opened a firearms and drug trafficking investigation on Anthony A. SHUSTER Jr. a/k/a Tiny. Your affiant opened this investigation after receiving information from ATF Confidential Informant (CI) #27350. The ATF CI alleged that Mr. SHUSTER was engaging in the business of selling crystal methamphetamine from his job site location in Pleasants County, in the Northern Judicial District of West Virginia. The ATF CI also stated that Mr. SHUSTER had previously shown him a rifle with an obliterated serial number and that Mr. SHUSTER had offered it for sale and said he could get more firearms like it. The ATF CI said that the rifle was at Mr. SHUSTER's job site location in Pleasants County, West Virginia. The ATF CI stated that MR. SHUSTER works for Jay Bee Oil and Gas Inc, specifically located at an Oil and Gas Pad at 510 Gardner Cemetery Road, Friendly, WV. The ATF CI provided your affiant with two phone numbers for Mr. SHUSTER; **304-476-2280** and 740-509-1101. The ATF CI said that Mr. SHUSTER uses both phones, but primarily uses **304-476-2280** (the Device to be searched) for criminal activity.

8. On January 10, 2019, your affiant and other ATF Special Agents led an operation in which ATF CI #27350 planned to introduce an undercover ATF Special Agent (hereinafter the UC) to Mr. SHUSTER. On this date, and a few days prior, the ATF CI and Mr. SHUSTER exchanged several text messages arranging the meeting. Mr. SHUSTER discussed the price and quantity of crystal methamphetamine that he would sell to the UC on January 10, 2019.

On the day of the planned meeting, Mr. SHUSTER postponed the meeting with the UC and the ATF CI several times over several hours. Eventually, Mr. SHUSTER texted the ATF CI and advised him to meet on the lease road for the deal. Specifically Mr. SHUSTER texted, "When I text you meet me on the lease road but wait on me don't ask about me, I only have 1 zip 1000 cash [sic]". Mr. SHUSTER was referring to the road leading back to the oil pad where he worked. According to the ATF CI, "1 zip" referred to 1 ounce of crystal methamphetamine. While the UC and the ATF CI were traveling to the location requested by Mr. SHUSTER, Mr. SHUSTER called the ATF CI and again postponed the meeting due to his boss being present at the oil pad. Mr. SHUSTER used his cellular phone having number **(304) 476-2280,** to communicate with the ATF CI.

9. On January 15, 2019, your affiant authorized ATF CI #27350 to make recorded phone calls to Mr. SHUSTER at **(304) 476-2280**. In three recorded phone calls, Mr. SHUSTER discusses the crystal methamphetamine and firearms that he allegedly had for sale. Mr. SHUSTER told the ATF CI that he had a machine gun that he would sell for $5,000. Mr. SHUSTER also purported that he had 47 "AR" type rifles and 20 ounces of crystal methamphetamine that he wanted to sell. The ATF CI and Mr. SHUSTER arranged a meeting for January 17, 2019, whereas Mr. SHUSTER planned to sell several ounces of crystal methamphetamine to the UC.

10. On January 17, 2019, your affiant and other ATF Special Agents led an operation in which ATF CI #27350 planned to introduce the UC to Mr.

SHUSTER. During the introduction meeting, Mr. SHUSTER planned to sale crystal methamphetamine to the UC. Mr. SHUSTER arrived at the pre-selected location, to meet with the UC and the ATF CI. Mr. SHUSTER requested that the UC and the ATF CI follow him to another location. Mr. SHUSTER led them to the parking lot of the Dairy Queen restaurant in Ellenboro, WV. There, Mr. SHUSTER sold 83.94 grams of crystal methamphetamine (DEA Lab Tested and Measured). Mr. SHUSTER gave 1.9612 grams of crystal methamphetamine (DEA Lab Tested and Measured) to the ATF CI. During the transaction, Mr. SHUSTER discussed dealing controlled substances and trafficking in firearms with the UC. On this day, the ATF CI contacted Mr. SHUSTER via **(304) 476-2280,** Target Cell Phone. Mr. SHUSTER provided details about meeting locations and gave estimated times for his arrival using telephone # **(304) 476-2280**.

11. On January 23, 2019, your affiant received call detail records obtained through a subpoena provided to AT&T for cellular number **(304) 476-2280,** Target Cell Phone. AT&T returned with the requested information, which revealed wireless subscriber information for **(304) 476-2280,** Target Cell Phone. The financially liable party to the aforementioned number is Jay Bee Oil and Gas Inc, 1720 Route 22 E, Union, NJ 07083. The user information for the aforementioned number is listed as Anthony SHUSTER of 3570 Shields Hill Road, Cairo, WV 26337, from 03/04/2014 — Current, IMSI: 310410095845748.

12. On January 30, 2019, ATF Special Agents of the Clarksburg Field Office and

Wheeling Satellite Office led an operation in which the UC and ATF CI #27350 again met with Mr. SHUSTER in Ellenboro, WV. Your affiant was not present on this date and the following is a summary of events provided to your affiant through testimony by other ATF Special Agents present and through written reports. On this date, the UC and CI #27350 met with Mr. SHUSTER and Mr. SHUSTER's wife, Amy Lambert-SHUSTER, in Ellenboro, WV. Prior to the meeting, Mr. SHUSTER used Target Cell Phone to convey details about the planned meeting. Mr. SHUSTER sold a machine gun and 28.18 grams of crystal methamphetamine (DEA Lab Tested and Measured) to the UC for $4,000. Mr. SHUSTER also provided the phone number of the device to be searched, **304-476-2280**, to the UC for future conversations and drug/firearm transactions.

13. On February 4, 2019, ATF CI #27350 provided a text message photograph and other information to your affiant. The ATF CI stated that Mr. SHUSTER sent him a photograph of some vacuumed sealed bags of marijuana from the device's phone number. The ATF CI also spoke to Mr. SHUSTER using the device's phone number and said that he (Mr. SHUSTER) had received a 30-pound shipment of marijuana from his Colorado source. Mr. SHUSTER allegedly requested that the ATF CI help him (Mr. SHUSTER) sell the marijuana.

14. On February 12, 2019, ATF CI #27350 made three recorded phone calls to Mr. SHUSTER via the phone number of the device to be searched. Mr. SHUSTER demanded that the UC pay $2,000, which Mr. SHUSTER stated

was still owed to him from the machine gun and crystal methamphetamine sale that occurred on January 30, 2019. Mr. SHUSTER demanded that the ATF CI provide the UC's home address so he (Mr. SHUSTER) could retrieve his money.

15. On February 13, 2019, the UC received a text message from Mr. SHUSTER, via the phone number of the device to be searched, and Mr. SHUSTER requested that the UC use his other phone number, 740-509-1101, for future communications. Provided the fact that device to be searched is a paid for and provided to Mr. SHUSTER by Jay Bee Oil and Gas Inc., it is your affiant's belief that Mr. SHUSTER would continue to carry and use the device for criminal activity, including the target offenses, as long as he is employed by Jay Bee Oil and Gas Inc.

16. On February 21, 2019, your affiant applied for, and obtained, Federal Search warrants, Case No.: 5:19 MJ 8 and 5:19 MJ 9, for the historical and prospective location data associated with the device having telephone number **(304) 476-2280**. To be noted, several subsequent search warrants were later obtained for the prospective location data associated with the device having telephone number **(304) 476-2280**.

17. On February 26, 2019, the UC spoke to Mr. SHUSTER on two occasions via telephone #740-509-1101. The UC talked to Mr. SHUSTER about meeting together the following day, to which Mr. SHUSTER enthusiastically agreed. SHUSTER said he wanted to meet the UC's "guy", or boss, in order to discuss becoming part of the "crew", or main supplier of firearms. The UC invited

Mr. SHUSTER to bring some handguns to the meeting, which would allegedly occur the following day. Mr. SHUSTER told the UC that he would bring 100 handguns. Mr. SHUSTER said he did not require immediate payment for the handguns and that the UC could take them, sell them, and pay him (SHUSTER) back later. SHUSTER advised the UC that he (SHUSTER) would be going on vacation to Gatlinburg, TN the following day, thus they would have to meet early in the morning before he began traveling. In the second phone call between the UC and Mr. SHUSTER that day, Mr. SHUSTER asked the UC to meet him at the casino in Charleston, WV. The phone call ended abruptly.

18. On February 27, 2019, Mr. SHUSTER did not meet the UC as planned the day before. At approximately 1:30 pm, Mr. SHUSTER called the UC, via 740-509-1101. Mr. SHUSTER apologized and said that he had issues that kept him from meeting with the UC. Mr. SHUSTER told the UC that he still wanted to meet and that he (SHUSTER) had talked to his "boys" about keeping the "box" for a while longer to give to the UC. The "box" Mr. SHUSTER was referring to is believed to be a box containing an alleged large number of handguns. Mr. SHUSTER told the UC that he (SHUSTER) still wanted to conduct future firearm transactions with the UC.

19. On March 13, 2019, Mr. SHUSTER provided the UC with a new cell phone number, 910-280-3429. Mr. SHUSTER asked the UC to contact him using the new number, rather than the old number, 740-509-1101. It is your affiant's training and experience that drug and firearm traffickers often change phones

and phone numbers in order to evade law enforcement detection.

20. On March 15, 2019, ATF CI #27350 called Mr. SHUSTER and asked whether he, SHUSTER, would be interested in meeting with him, the CI, and the UC on March 18, 2019. Mr. SHUSTER agreed to meet with the CI and UC. On March 16, 2019, the CI made a recorded call to Mr. SHUSTER. Mr. SHUSTER, using code to speak about drugs, agreed to sale crystal methamphetamine to the UC for $750 per ounce, if the UC purchased 16 ounces or more.

21. On March 18, 2019, Mr. SHUSTER did not meet with the UC and CI #27350 as previously planned. Mr. SHUSTER did however speak with the CI and provided excuses for not making the planned meeting. Mr. SHUSTER told the CI that he needed to go back home in order to get the "stuff", referring to firearms and crystal methamphetamine. Mr. SHUSTER told the CI that he could meet with the CI and UC, later that same day or the following day. Mr. SHUSTER told the CI that if they waited until the following day then his wife, Amy Lambert-SHUSTER could bring the "stuff" out to the job site. The CI, giving Mr. SHUSTER an out, told SHUSTER that if he was not in the game anymore, i.e. not still selling firearms and crystal methamphetamine, it was ok. SHUSTER reassured the CI that he was in fact still interested in the transactions.

22. On September 4, 2019, Mr. SHUSTER and Amy LAMBERT-SHUSTER were indicted by a Federal Grand Jury in Clarksburg, WV. A three-count indictment was returned charging Mr. SHUSTER with distribution of more than 50 grams

of methamphetamine, distribution of more than 5 grams of methamphetamine, and unlawful transfer of a machinegun. Mrs. LAMBERT-SHUSTER was charged with aiding and abetting the unlawful transfer of a machine gun.

23. On September 11, 2019, your affiant applied for and obtained a search warrant for the residence where Mr. SHUSTER and Mrs. LAMBERT-SHUSTER reside, 15076 McConnellsville Road, Caldwell, Ohio. The warrant was executed on September 21, 2019. Mr. SHUSTER and Mrs. LAMBERT-SHUSTER were both present at the time the warrant was executed; both were arrested.

24. After Mr. SHUSTER's arrest, your affiant read Mr. SHUSTER his Miranda rights and Mr. SHUSTER agreed to answer some questions. Mr. SHUSTER admitted to being an illegal user of/addicted to, crystal methamphetamine and cocaine. Mr. SHUSTER also admitted to selling controlled substances as well as possessing and transferring a machinegun. Mr. SHUSTER provided consent to search his residence, truck, outbuilding, and the enclosed trailer parked in his yard. While your affiant continued interviewing Mr. SHUSTER, other ATF Special Agents commenced a search of the authorized areas. Areas authorized by the search warrant obtained on September 11, 2019 and areas authorized by Mr. SHUSTER's consent.

25. While searching the residence, Special Agent Matthew Bassett encountered a cellular telephone. It is standard/best practice to disconnect phones from their network or put them in airplane mode, effectively suspending the ability for suspects, or co-conspirators, to communicate or otherwise destroy/remove potential evidence from mobile type devices. Special Agent Matthew Bassett was placing

the cellular telephone in airplane mode when a text message banner came across the phone's lock screen. The message read, "I'd give 100 a o" from (740) 459-0642. Special Agent Matthew Bassett immediately recognized this as likely being conversation regarding the attempted purchase of controlled substances. The cellular phone, more thoroughly described in Attachment A, had a label on the back of the phone, which reads, "Shusta, Tony (910) 280-3429". The cellular phone was seized as evidence as part of the consent/search warrant.

26. On September 23, 2019, your affiant transported Mr. SHUSTER and Mrs. LAMBERT-SHUSTER from the Noble County Jail to the Wheeling Federal Building for their initial appearance. While transporting, Mr. SHUSTER gave consent to search his cellular phone having phone number 304-476-2280. The consent to search Mr. SHUSTER's phone was documented in writing on a consent to search form and was recorded on an audio recording device. Mr. SHUSTER also provided the passcode for the cellular phone.

27. On the above-mentioned date, your affiant accessed Mr. SHUSTER's phone in order to obtain a telephone number requested by Mr. SHUSTER. The phone number was for an individual that Mr. SHUSTER wished to call after his initial appearance in order to secure transportation for he and his wife back to Caldwell, Ohio from Wheeling, West Virginia. Your affiant also accessed Mr. SHUSTER's phone's settings screen, which tells the phone's identifying information. Your affiant accessed this information for the purposes of properly identifying the phone to be searched. The phone's identifying information is as follows, iPhone 8, S/N: F4HWMK5FJC67, provider AT&T, phone number 304-476-2280.

28. It is your affiant's belief, through training and experience that the device described in Attachment A will contain evidence of the distribution of controlled substances and/or use of controlled substances by Mr. SHUSTER and possession of firearms, constituting violations of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 922(o).

29. Based on your Affiant's training and experience, users/possessors/dealers of controlled substances routinely have and/or maintain information regarding their habits and transactions on their cellular phones. This information is often found in text messages, voice messages, pictures, and other applications used to communicate. Your Affiant is also aware that those who engage in the trafficking of drugs often maintain one or more firearms close at hand for the purposes of self-protection or protection of assets. Routinely, photographs of these firearms can be found on the drug trafficker's mobile devices.

30. A Device of this type will continue to hold the electronically stored information desired indefinitely.

31. The Device is currently located at the ATF Field Office in Wheeling, WV. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of ATF.

## CONCLUSION

32. Your Affiant submits that there is probable cause to believe that a forensic examination of the Device will reveal evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1) and violations of Title 18, United States Code, Section 922(o).

33. I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the Device to seek items described in Attachment B.

Respectfully submitted,

Travis L. Campbell
Special Agent, ATF

Subscribed and sworn to before me this 7 day of October, 2019.

Michael J. Aloi
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

By Phone
SA Campbell + Aust Vogrin
in Wheeling and MJ in GKS.